## KNIGHT v. FISCHER.

Court of Appeals of District of Columbia.

Submitted January 10, 1928. Decided March 5, 1928.

No. 1998.

Patents ⬤⟳90(5)—Party first reducing invention to practice held to prevail in interference proceeding involving device for molding minced meat into blocks.

In interference proceeding, involving device for molding minced meat into blocks for convenient slicing for use in making sandwiches, party who first reduced invention to practice *held* entitled to prevail, as against evidence of the opposing party introduced to show earlier date of conception.

Appeal from the Commissioner of Patents.

Interference proceeding between Charles H. Knight and Carl T. Fischer. From a decision in favor of Fischer, Knight appeals. Affirmed.

N. J. Jewett, of Washington, D. C., for appellant.

A. J. Fihe, of Chicago, Ill., and C. B. Hamilton, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This is an interference proceeding, involving a device for molding minced meats into blocks, so that it can be conveniently sliced for use in making sandwiches. The issue is involved in a single count, as follows:

"In a mold of the class described, a body portion having angularly disposed walls said body portion opening along a line extending lengthwise thereof, said body portion being constructed to be sprung apart from a corner thereof."

It is conceded that the party Fischer was the first to reduce the invention to practice, and the dates accorded him by the tribunals of the Patent Office for reduction to practice in April, 1923, and for conception in December, 1922, are fully supported by the record.

To overcome these dates the party Knight attempted to establish a date of conception as early as July, 1922, when he claims to have seen a square mold at Hazard, Ky., which was manufactured by Swift & Co. He testified that on returning home he took the matter up with one Miles, sales manager of the Louisville Provision Company, and they experimented in making square sausages. This experience was a failure, however, because the sausage had to be boiled in the square mold and then removed from the mold and smoked.

Later the party Knight, in company with Miles, visited a plant in Indianapolis, Ind., and were shown a round mold, at which time Knight claims that he suggested the possibility of making a mold out of wire. On returning to Louisville, Knight and Miles took up the matter of manufacturing a square container that would obviate the trouble they had experienced in connection with perforated and solid molds. The record, however, is silent as to what actually resulted from the experimental work of Knight and Miles.

Knight claims that he then made known his ideas to one Poschinger, and asked him to manufacture some molds that would be workable. Knight claims that he furnished Poschinger some sketches, but this is definitely denied by Poschinger, who says that Knight simply gave him an oral description of what he wanted. Poschinger prepared some molds, which, it may be conceded, fairly came within the issue; but Poschinger testifies that the first time the idea of a square mold was brought to his attention by Knight was "about July, 1923." This, of course, is too late a date to be of any advantage to Knight.

Taking the testimony as a whole, we fully agree with the conclusion of the Commissioner that "the nature of the ideas that he im-

parted to Poschinger does not appear, but, even assuming that at the time he called Poschinger to his aid he was in possession of a clear and definite conception of the invention in issue, which assumption is inconsistent with Poschinger's testimony, still Knight could not be given a date of conception earlier than Fischer's date. * * * If Knight be given a date of conception as early as July, 1922, then it must be held that he was lacking in diligence. No reasonable excuse has been offered for a delay of more than a year in embodying the simple inventive concept in issue in an operative mold."

In any view of the case, Fischer, as found by the concurrent decisions of the tribunals below, must prevail.

The decision of the Commissioner is affirmed.